## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## COLUMBIA DIVISION

| | | |
|---|---|---|
| AMAURY BAKER, | ) | Civil Action No.:  0:25-cv-179-DCN-PJG |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| SOUTH CAROLINA DEPARTMENT | ) | |
| OF JUVENILE JUSTICE, JENNA | ) | |
| MUHAMMAD, JOHN DOE and JANE | ) | |
| DOE, | ) | |
| | ) | |
| Defendants. | | |

Plaintiff, by and through his undersigned counsel, does hereby complain of Defendants and respectfully alleges as follows:

1. Amaury Baker, (hereinafter "Plaintiff"), was, at all times relevant hereto a citizen and resident of Richland County, South Carolina.

2. Plaintiff was, at all times relevant hereto a citizen and resident of Richland County, South Carolina and at all times mentioned herein was in the custody of SCDJJ at their Midlands Evaluation Center ("MEC") and Broad River Road Complex ("BRRC").

3. Defendant Jenna Muhammad was, at all times relevant hereto an employee of the South Carolina Department of Juvenile Justice ("SCDJJ") and a citizen and resident of Richland County, South Carolina.

4. Defendants John Doe and Jane Doe are employees of SCDJJ and are place-holder names until their identities may be ascertained through discovery.

5. Defendant SCDJJ is the state agency responsible for providing custodial care and rehabilitation to children who are incarcerated, on probation or parole, or in community placement for a criminal status offense. See S.C. Code Ann. §§ 63-19-310, 63-19-350. At all times herein mentioned in this lawsuit, Defendant SCDJJ acted and carried on its business by and through its agents, servants and/or employees at its various locations and is subject to suit pursuant to the Section 1983 of Title 42 of the United States Code (42 U.S.C. § 1983).

6. The acts and omissions of Defendants complained of herein occurred in Richland County, South Carolina.

7. The parties hereto, subject matter hereof, and all matters hereinafter alleged are within the jurisdiction of this Court and this Court is the proper venue for this action.

## JURISDICTION AND VENUE

8. This action arises under the Eighth Amendment to the United States Constitution; the Fourteenth Amendments to the United States Constitution; the Civil Rights of Institutionalized Persons Act, 42 U.S.C. § 1997 et seq ("CRIPA"); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 1983, and Section 504 of the Rehabilitation Act ("Section 504") pursuant to 28 U.S.C. § 1331.

9. Plaintiff's Eighth and Fourteenth Amendments claims for relief are actionable under 42 U.S.C. § 1983, which authorizes actions to redress the deprivation under color of state law of rights, privileges, and immunities secured by the Constitution and laws of the United States and under 42 U.S. Code § 1988, which allows the prevailing party for reasonable attorney's fees.

10. This court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 2201, and 2202, as well as 42 U.S.C. § 1983.

11. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims brought by Plaintiffs have occurred in the District of South Carolina and Defendants are located in the District.

12. Venue is proper in the Columbia division under Local Rule 3.01 because a substantial portion of the events or omissions giving rise to the claims occurred in this division.

## FACTUAL BACKGROUND

13. South Carolina's juvenile justice system is operationally and philosophically distinct from the adult criminal justice system. Under South Carolina law, SCDJJ is responsible for "providing or arranging for necessary services leading to the rehabilitation" of the youth in its custody. S.C. Code Ann. § 63-19-350(7) (emphasis added). "The Juvenile Court is theoretically engaged in determining the needs of the child and of society rather than adjudicating criminal conduct. The objectives are to provide measures of guidance and rehabilitation for the child and protection for society, not to fix criminal responsibility, guilt and punishment." Alexander S. By and Through Bowers v. Boyd, 876 F. Supp. 773, 796 n.42 (D.S.C. 1995) (citing Kent v. United States, 383 U.S. 541, 554-55 (1966)). Accordingly, the juvenile system's principal purpose is to manage youth under a strategy of redirection and rehabilitation, rather than punishment.

14. SCDJJ was established to provide "custodial care and rehabilitation" to children in South Carolina. On its website, SCDJJ claims to "operate[] its own accredited school district, help[] youth pursue career and workforce development opportunities, show[]

youth how to make a positive impact on their local communities, and provide[] rehabilitative and recreational services tailored to the individual needs of each young person under agency supervision."

15. SCDJJ is charged with housing and rehabilitating wayward juveniles in South Carolina between the ages of 12 and 18.

16. Juveniles' physical and mental vulnerabilities increase the need for stronger protections in correctional facilities. Juveniles are developmentally different from adults and, as such, they require heightened specialized care and treatment by well-trained staff. See Roper v. Simmons, 543 U.S. 551, 569 (2005) (asserting that juveniles are different from adults because youth lack maturity and have an underdeveloped sense of responsibility); see also Graham v. Florida, 560 U.S. 48, 68 (2010) (acknowledging psychological differences between youth and adults).

17. CRIPA requires prisoners to have similar constitutional safeguards as civilians. See § 1997(a) (articulating that prisoners are endowed with constitutional rights and cannot be subjected to unlawful confinement conditions). These protections also extend to juveniles in correctional facilities. See § 1997(a)(1)(B) (stating that juveniles held awaiting trial, residing in facilities to receive care or treatment, or any other institution, excluding residential facilities, are protected under this Act).

18. Title II of the ADA guarantees qualified individuals with disabilities an equal opportunity to access the benefits of the services, programs, or activities of a public entity. 42 U.S.C. § 12132.

19. SCDJJ is a government agency and therefore a public entity subject to Title II of the ADA. Under the ADA, public entities are responsible for the discriminatory actions of their employees.

20. Discrimination under Title II of the ADA includes the failure to make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability. 28 C.F.R. § 35.130(b)(7)(i).

21. SCDJJ is obligated to evaluate its current services, policies, practices, and their effects and make any necessary modifications of those services, policies, and practices to achieve compliance with the ADA.

22. Under Title II, a public entity may not "[a]fford a qualified individual with a disability an opportunity to participate in or benefit from the aid, benefit, or service that is not equal to that afforded others" or "[p]rovide a qualified individual with a disability with an aid, benefit, or service that is not as effective in affording equal opportunity to obtain the same result, to gain the same benefit, or to reach the same level of achievement as that provided to others." 28 C.F.R. § 35.130(b)(1)(ii)–(iii).

23. To ensure compliance with the ADA, public entities, including police departments, must provide training adequate to ensure that individuals with disabilities are provided services in a manner that complies with the ADA. The SCDJJ fails to provide adequate training to its officers on its written policies, manuals, and orders concerning how to interact with and respond to individuals suffering from mental health disabilities and experiencing mental health or emotional crises. The SCDJJ also fails to provide crisis intervention training to all of its officers, even though its officers are all likely to encounter situations where such skills are essential.

24. Plaintiff is a qualified individual with a disability protected by the ADA, see 42 U.S.C. §§ 12102, 12131(2). During his incarceration at SCDJJ Plaintiff suffered from depression, anxiety, and PTSD, disabilities within the meaning of the ADA.

25. The Rehabilitation Act mandates that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

26. SCDJJ receive federal financial assistance and are therefore covered by the Rehabilitation Act. They are responsible under Section 504 for the discriminatory acts of their employees.

27. To ensure compliance with Section 504, local and state governments must provide adequate training to their employees to ensure that individuals with disabilities are provided services in a manner that complies with Section 504. SCDJJ fails to provide adequate training to its officers on its written policies, manuals, and orders concerning how to interact with and respond to individuals suffering from mental health disabilities and experiencing mental health and emotional crises. SCDJJ also fails to provide crisis intervention training to all of its officers, even though its officers are all likely to encounter situations where such skills are essential.

28. The failure of SCDJJ to properly train SCDJJ officers to respond to individuals with mental health disabilities violates Section 504.

29. Plaintiff is a qualified individual with a disability protected by Section 504 of the Rehabilitation Act. See 29 U.S.C. § 794(a); 45 C.F.R. § 84.3(j).

30. SCDJJ's policy on Use of Physical Force states that "All facility employees will use verbal intervention efforts and other de-escalation techniques, as provided by policy-driven behavior management processes to resolve conflict situations when the youth is not currently physically violent and does not present a threat of immediate harm to the youth or others" (SCDJJ Policy No. 315 (B) (1)). The same policy says that "Employees may call for preventive support from the Rapid Response Team (RRT) which is tasked with providing immediate response, de-escalation and use of physical force only when necessary" (Id. (B) (4)).

31. SCDJJ is obligated to evaluate its current services, policies, practices, and their effects and make any necessary modifications of those services, policies, and practices to achieve compliance with the ADA and Section 504.

32. SCDJJ failed to create policies to address how to respond appropriately and non-violently to youth with mental illness or in mental or emotional crisis.

33. SCDJJ failed to train its officers to respond appropriately and non-violently to youth with mental illness or in mental or emotional crisis.

34. SCDJJ does not supervise or discipline officers' use of excessive force against youth experiencing mental or emotional distress.

35. On information and belief, only one of the officers in the encounters with Plaintiff was disciplined.

36. Juveniles deserve, and are entitled to, constitutional safeguards. See 34 U.S.C. § 30302(3), (7) (2017) (asserting that juveniles have special protections and facilities must ensure that these constitutional safeguards are not violated).

37. Juveniles in custody at SCDJJ facilities, including Plaintiff, possess a clearly recognized liberty interest to remain free from unreasonable threats to their physical safety.

38. At all times relevant hereto, Plaintiff was as in the custody of SCDJJ at BRRC and MEC, facilities operating within Richland County, South Carolina.

39. Defendant SCDJJ's failures to meet minimum standards set forth by federal law, South Carolina law and Defendant's own policies and procedures are not the result of inadequate funding; according to the LAC's 2017 and 2021 reports, there is ample funding for SCDJJ to solve all the harm complained of herein.  2017 LAC Report Summary,

lac.sc.gov/sites/lac/files/Documents/Legislative%20Audit%20Council/Reports/A-K/DJJ_Summary.pdf;     2021     LAC     Report     Summary,

lac.sc.gov/sites/lac/files/Documents/Legislative%20Audit%20Council/Reports/A-K/DJJ_Summary-2021.pdf.

40.  Defendant SCDJJ possesses the ability and means to solve the harm complained of herein but fails and refuses to do so.

41. The harmful conduct inflicted by Defendants on the Plaintiff can generally be grouped into two (2) categories:

    a.   excessive and punitive isolation;

    b.   physical harm and excessive force;

### Excessive and Punitive Isolation

42. At all times relative hereto, Plaintiff was a youth with mental illness and special needs in SCDJJ custody.

43. While in SCDJJ's custody, Defendants used solitary confinement or isolation on the Plaintiff in a manner that violates SCDJJ policy, South Carolina law, and United States law, including but not limited to, rights conferred by the United States Constitution and Federal Law.

44. Between April 2024 and June 2024, Plaintiff was sent to solitary confinement ("wet cell") at Defendant's facility, in the Cyprus Dorm on several occasions for four (4) to five (5) days at a time.

45. Plaintiff received insufficient medical and mental health treatment while in solitary confinement.

46. The amount of time Plaintiff spent in isolation violated Defendant's own policies and procedures.

47. John Doe or Jane Doe was responsible for placing Plaintiff in isolation.

48. John Doe or Jane Doe used isolation of the Plaintiff to enforce compliance with SCDJJ's rules.

49. John Doe or Jane Doe used isolation to punish the Plaintiff.

50. While in isolation, Plaintiff spent no less than 23 hours per day alone.

51. Plaintiff spent an excessive and unconstitutional amount of time in isolation.

52. The sparse medical and mental health treatment Plaintiff received while in isolation violated Defendant's policies and procedures.

53. John Doe and Jane Doe denied Plaintiff access to shower during his time in isolation.

54. John Doe and Jane Doe denied Plaintiff access to outdoors during his time in isolation.

55. John Doe and Jane Doe denied Plaintiff access to natural light during his time in isolation.

56. John Doe and Jane Doe denied Plaintiff access to recreational materials during his time in isolation.

57. John Doe or Jane Doe acted with deliberate indifference to the substantial risks of harm the Plaintiff faced while in custody. The conditions, policies, and practices at SCDJJ are punitive towards youths, including the Plaintiff, and are a substantial departure from accepted professional judgment, practices, and standards.

58. The conditions to which John Doe or Jane Doe subjected the Plaintiff, along with SCDJJ's policies and practices, endangered Plaintiff's health and safety, his physical well-being, deprived Plaintiff of programming and education, and deprived the Plaintiff of due process of law.

### Physical Harm and Excessive Force
### Jenna Muhammad, Doe, Doe

59. Plaintiff incorporates by reference all previous paragraphs above as if repeated herein verbatim.

60. On or about July or August 2023, Plaintiff was at the MEC (Delta Pod). While Plaintiff was asleep in his cell, John Doe allowed about ten (10) other youth to enter the Plaintiff's cell and attack him.

61. Plaintiff was injured as a result of the assault. Without limitation and by way of example, his nose was bleeding, and he sustained an eye injury.

62. On or about October 13, 2023, Plaintiff was at the BRRC (Birchwood Highschool). There was a riot at school. Plaintiff was attacked again by several youth who hit him with a lock.

63. John Doe failed or refused to protect Plaintiff from the attack.

64. As a result of this assault, Plaintiff was severely injured. Without limitation and by way of example, his nose was broken, his right eye was injured, he had a laceration under his right eye.

65. Plaintiff was transported to Prisma Hospital where he underwent surgery and was hospitalized for approximately two (2) days.

66. On or about October 16, 2023, Plaintiff returned from the hospital. He was then housed at the BRRC (Poplar A).

67. John Doe, whose named may be Bennet, unprovoked, hit Plaintiff in his face with a shield and slammed him to the ground.

68. Plaintiff went to the infirmary to receive care for his injury.

69. John Doe/Bennet was fired as a result of the aforementioned conduct.

70. On or about November 20, 2023, Plaintiff was pushed off a table by RRT Member Jenna Muhammad at the BRRC, Cypress Dorm.

71. As a result of the push, Plaintiff fell to the floor and hit his head.

72. Lieutenants Michael Murray and Precious Kirkland witnessed the incident.

73. Immediately after that fall, Plaintiff was placed in restraints and taken to the infirmary, where he was treated.

74. Plaintiff experienced concussion symptoms such as vomiting and swelling on his head as a result of the aforementioned injury and he reported these symptoms to a social worker at SCDJJ.

75. In November 2023, Plaintiff was at BRRC (Cypress Dorm).

76. While in SCDJJ custody, Plaintiff drank Clorox. The chemical bottle was sitting on the table available to Plaintiff, despite the fact that Defendant was aware of Plaintiff's prior numerous suicidal attempts.

77. Plaintiff was transported to a hospital for treatment related to the aforementioned suicide attempt.

78. On or about January 17, 2024, Plaintiff was at BRRC (Cypress Dorm).

79. While Plaintiff was in the courtyard waiting to go to school, John Doe, whose name may be Timmons, opened the door of Cypress pod A, for the purpose of allowing other youth to attack the Plaintiff.

80. John Doe/Timmons stood by and observed as the other youth were striking Plaintiff in his face with rocks in socks.

81. While they were assaulting him, John Doe, whose name may be Bates, sprayed O.C. spray on the Plaintiff.

82. Plaintiff told John Doe/Timmons a week prior that the other youth intended to attack him.

83. Other staff members witnessed the aforementioned assault. Nobody intervened.

84. On or about April 7, 2024, Plaintiff was at BRRC (Poplar Dorm).

85. John Doe, whose name may be Bell, grabbed Plaintiff from behind when Plaintiff was trying to go to the bathroom.

86. John Doe/Bell and John Doe, whose name may be Feola, put Plaintiff's hands behind his back, handcuffed him behind his back and left him in his room for over 30 min.

87. On or about April 7, 2024, Plaintiff was at BRRC (Poplar Dorm).

88. John Doe/Bell dragged Plaintiff to his room.

89. John Doe/Feola put his knee to Plaintiff's head and a PSO tasered him.

90. Plaintiff passed out and urinated on himself. About 30 min later he was taken to the infirmary.

## FOR A FIRST CAUSE OF ACTION
### 42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Cruel and Unusual Punishment under 8th Amendment, Doe)

91. The foregoing allegations are re-alleged at if set forth herein verbatim.

92. This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

93. The Eighth Amendment ensures that every individual has a protected right against cruel and unusual punishment. The Eighth Amendment also sets constitutional boundaries on the conditions of imprisonment. See Boddie v. Schnieder, 105 F.3d 857, 861 (2d Cir. 1997) (stating that the Eighth Amendment provides specific protections for prisoners). These conditions specifically outline protections for prisoners from the use of excess force or mistreatment by prison authorities. See Williams v. Mussomelli, 722 F.2d 1130, 1132 (3d Cir. 1983) (recognizing that prison officials are permitted to use force when necessary to maintain discipline but may not use force that violates the standards of decency).

94. Under the Due Process Clause of the United States Constitution, isolation of young people is only justified where the placement is reasonably related to a legitimate government objective.

95. Restrictions such as isolation that do not relate to a legitimate goal amount to punishment, are unlawful, and violate the Plaintiff's rights.

96. The United States Constitution forbids isolating youth solely for punishment.

97. SCDJJ uses isolation to punish youth.

98. The individual defendants used isolation to punish the Plaintiff.

99. The individual defendants used isolation to punish the Plaintiff when there was no threat to health or safety.

100.    It is SCDJJ policy to only isolate youth for Level 3 offenses such as fights with injuries and large group disturbances that pose serious threats to safety.

101.    Plaintiff was placed in isolation as punishment for showing disrespect to staff, agents, or employees of SCDJJ.

102.    Plaintiff was placed in isolation for failing to comply with directions of staff, agents, or employees of SCDJJ.

103.    Plaintiff was placed in isolation for time extending beyond four (4) hours.

104.    The individual defendants improperly prolonged isolation of the Plaintiff in violation of the Constitution.

105.    John Doe or Jane Doe was responsible for placing Plaintiff in isolation.

106.    Plaintiff suffered harm as a result of being placed in isolation for extensive period of time.

107.    The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering.  Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

## **FOR A SECOND CAUSE OF ACTION**

**(42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Excessive Force, Doe, Doe)**

108.    The foregoing allegations are re-alleged at if set forth herein verbatim.

109.    This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

110.    John Doe allowed about ten (10) other youth to enter the Plaintiff's cell and attack him.

111.    Allowing other youth to enter Plaintiff's cell while he was asleep and not protecting Plaintiff from the assault is objectively unnecessarily excessive under the circumstances set forth above.

112.    The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

    a.    Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

    b.    In not protecting Plaintiff from inappropriate and/or unlawful force against the Plaintiff;

    c.    In not protecting Plaintiff from excessive physical force against the Plaintiff;

113.    Plaintiff suffered harm as a result of being attacked.

114.    John Doe or Jane Doe was responsible for Plaintiff being attacked by other youth.

115.    Defendants John Doe and Jane Doe acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in not protecting Plaintiff from the attack.

116.    The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering. Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

### FOR A THIRD CAUSE OF ACTION
**(42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Excessive Force, Doe, Doe)**

117.    The foregoing allegations are re-alleged as if set forth herein verbatim.

118.    This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

119.    John Doe did not protect Plaintiff from being attacked by several youth who hit him with a lock while at Birchwood Highschool.

120.    Allowing other youth to attack Plaintiff and not protecting Plaintiff from an assault is objectively unnecessarily excessive under the circumstances set forth above.

121.    The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

      a. Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

b.   In not protecting Plaintiff from inappropriate and/or unlawful force against the Plaintiff;

c.   In not protecting Plaintiff from excessive physical force against the Plaintiff;

122.     Plaintiff suffered harm as a result of being attacked.

123.     John Doe or Jane Doe was responsible for Plaintiff being attacked by other youth.

124.     Defendants John Doe and Jane Doe acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in not protecting Plaintiff from the attack.

125.     The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering.  Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

## FOR A FOURTH CAUSE OF ACTION
**(42 U.S.C. § 1983, Excessive Force, Substantive Due Process under 14th Amendment, Cruel and Unusual Punishment under 8th Amendment, Doe)**

126.     The foregoing allegations are re-alleged as if set forth herein verbatim.

127.     This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

128.     John Doe, unprovoked, hit Plaintiff in his face with a shield and slammed him to the ground.

129.     Hitting Plaintiff and slamming him to the ground is objectively unnecessarily excessive under the circumstances set forth above.

130.     The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

    a.  Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

    b.  In using inappropriate and/or unlawful force against the Plaintiff;

    c.  In using excessive physical force against the Plaintiff;

    d.  In using any force whatsoever against the Plaintiff, a juvenile in custody at SCDJJ;

131.     Plaintiff suffered harm as a result of being hit in his face and slammed to the ground.

132.     John Doe or Jane Doe was responsible for hitting Plaintiff and slamming him to the ground.

133.     Defendants John Doe and Jane Doe acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in hitting Plaintiff and slamming him to the ground.

134.     The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering.  Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

## FOR A FIFTH CAUSE OF ACTION
### (42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Excessive Force, ADA Section 504, Muhammad, Doe, Doe)

135.     The foregoing allegations are re-alleged at if set forth herein verbatim.

136.     This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

137.     Pushing Plaintiff off a table is objectively unnecessarily excessive under the circumstances set forth above.

138.     Defendant Muhammad failed to reasonably modify her approach to Plaintiff's behavior at a time when she knew or should have known that Plaintiff was suffering from a mental health disability.

139.     Reasonable modifications under the circumstances would have included using verbal intervention efforts and other de-escalation techniques, approaching Plaintiff in a non-threatening manner, giving clear, calm commands, and offering aid.

140.     Defendant's failure to provide Plaintiff with reasonable modifications violated Title II of the ADA and Section 504.

141.     The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

    a.  Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

    b.  In using inappropriate and/or unlawful force against the Plaintiff;

    c.  In using excessive physical force against the Plaintiff;

d.  In using any force whatsoever against the Plaintiff, a juvenile in custody at SCDJJ;

142.    Plaintiff suffered harm as a result of being pushed off the table.

143.    Defendant Muhammad was responsible for pushing Plaintiff off the table.

144.    Defendant Mahammad acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in pushing Plaintiff off the table.

145.    The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering.  Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

## FOR A SIXTH CAUSE OF ACTION
**(42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Excessive Force, Doe, Doe)**

146.    The foregoing allegations are re-alleged as if set forth herein verbatim.

147.    This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

148.    John Doe did not protect Plaintiff from accessing and ingesting Clorox.

149.    Allowing Plaintiff access to toxic substances while having knowledge of Plaintiff's suicidal ideations and attempts is objectively unnecessarily excessive under the circumstances set forth above.

150.    The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

    a.  Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

    b.  In not protecting Plaintiff from access to toxic substances;

151.    Plaintiff suffered harm as a result of ingesting Clorox.

152.    John Doe or Jane Doe was responsible for Plaintiff ingesting Clorox.

153.    Defendants John Doe and Jane Doe acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in not protecting Plaintiff from ingesting Clorox.

154.    The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering. Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

## FOR A SEVENTH CAUSE OF ACTION
### (42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Excessive Force, ADA, Section 504, Doe, Doe)

155.    The foregoing allegations are re-alleged as if set forth herein verbatim.

156.    This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

157.    John Doe allowed other youth to attack Plaintiff with rocks and socks.

158.    John Doe had knowledge that the youth wanted to attack the Plaintiff.

159.    John Doe spayed Plaintiff with O.C. spray while Plaintiff was being attacked.

160.    Allowing Plaintiff to be attacked and using O.C. spray on Plaintiff is objectively unnecessarily excessive under the circumstances set forth above.

161.    Defendant John Doe failed to reasonably modify his approach to Plaintiff's behavior at a time when he knew or should have known that Plaintiff was suffering from a mental health disability.

162.    Reasonable modifications under the circumstances would have included using verbal intervention efforts and other de-escalation techniques, approaching Plaintiff in a non-threatening manner, giving clear, calm commands, and offering aid.

163.    Defendant's failure to provide Plaintiff with reasonable modifications violated Title II of the ADA and Section 504.

164.    The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

    a.  Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

    b.  In using inappropriate and/or unlawful force against the Plaintiff;

    c.  In using excessive physical force against the Plaintiff;

    d.  In using any force whatsoever against the Plaintiff, a juvenile in custody at SCDJJ;

165.    Plaintiff suffered harm as a result of being attacked and sprayed with O.C. spray.

166.    John Doe or Jane Doe was responsible for Plaintiff being attacked by other youth.

167.     John Doe was responsible for Plaintiff being sprayed with O.C. spray.

168.     Defendants John Doe and Jane Doe acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in not protecting Plaintiff from the attack and in spraying Plaintiff with O.C. spray.

169.     The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering.  Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

### FOR AN EIGHTH CAUSE OF ACTION
**(42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Excessive Force, ADA, Section 504, Doe, Doe)**

170.     The foregoing allegations are re-alleged as if set forth herein verbatim.

171.     This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

172.     John Doe and John Doe handcuffed Plaintiff's hands behind his back for no reason and left him in his room for over 30 min.

173.     Using mechanic restrains on Plaintiff for no justifiable reason is objectively unnecessarily excessive under the circumstances set forth above.

174.     Defendant John Doe failed to reasonably modify his approach to Plaintiff's behavior at a time when he knew or should have known that Plaintiff was suffering from a mental health disability.

175.     Reasonable modifications under the circumstances would have included using verbal intervention efforts and other de-escalation techniques, approaching Plaintiff in a non-threatening manner, giving clear, calm commands, and offering aid.

176.     Defendant's failure to provide Plaintiff with reasonable modifications violated Title II of the ADA and Section 504.

177.     The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

    a.   Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

    b.   In using inappropriate and/or unlawful force against the Plaintiff;

    c.   In using excessive physical force against the Plaintiff;

    d.   In using any force whatsoever against the Plaintiff, a juvenile in custody at SCDJJ;

178.     Plaintiff suffered harm as a result of being handcuffed for 30 minutes.

179.     John Doe or John Doe was responsible for Plaintiff being handcuffed.

180.     Defendants John Doe and John Doe acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in placing mechanical restraints on Plaintiff for no reason.

181.     The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering.  Therefore, the Plaintiff is entitled to

ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

## FOR A NINTH CAUSE OF ACTION
**(42 U.S.C. § 1983, Substantive Due Process under 14th Amendment, Cruel and Unusual Punishment under 8th Amendment, ADA, Section 504, Excessive Force, Doe, Doe)**

182.    The foregoing allegations are re-alleged as if set forth herein verbatim.

183.    This cause of action represents a separate and distinct tort, the damages for which are sought and may be recoverable separately from the foregoing causes of action.

184.    John Doe put his knee to Plaintiff's head and John Doe tasered him.

185.    Placing a knee to Plaintiff's head and using a taser on Plaintiff for no justifiable reason is objectively unnecessarily excessive under the circumstances set forth above.

186.    Defendant John Doe failed to reasonably modify his approach to Plaintiff's behavior at a time when he knew or should have known that Plaintiff was suffering from a mental health disability.

187.    Reasonable modifications under the circumstances would have included using verbal intervention efforts and other de-escalation techniques, approaching Plaintiff in a non-threatening manner, giving clear, calm commands, and offering aid.

188.    Defendant's failure to provide Plaintiff with reasonable modifications violated Title II of the ADA and Section 504.

189.    The aforementioned incidents and resulting harm were proximately caused by the intentional, reckless, willful and wanton acts of the individual defendants, in the following particulars:

    a.  Failing to adhere to local, state, and national standards, policies and procedures including the policies and procedures of SCDJJ;

    b.  In using inappropriate and/or unlawful force against the Plaintiff;

    c.  In using excessive physical force against the Plaintiff;

    d.  In using any force whatsoever against the Plaintiff, a juvenile in custody at SCDJJ;

190.    Plaintiff suffered harm as a result of being tased.

191.    John Doe or John Doe was responsible for Plaintiff being tased.

192.    Defendants John Doe and John Doe acted with malice, deliberate indifference, willfully, recklessly, and in a grossly negligent manner in putting his knee on Plaintiff's head and using a taser on him for no reason.

193.    The injuries received by the Plaintiff at the hands of the individual defendants have caused and continue to cause him harm, including, but not limited to, physical harm, mental anguish, pain and suffering.  Therefore, the Plaintiff is entitled to ACTUAL, CONSEQUENTIAL, AND PUNITIVE DAMAGES, costs, and attorney's fees.

### FOR A TENTH CAUSE OF ACTION
#### 42 U.S.C. § 1983 – Monell Claim
**(4th and 14th Amendments, ADA, Section 504, SCDJJ, John Doe, Jane Doe)**

194.    The foregoing allegations are re-alleged at if set forth herein verbatim.

195.    SCDJJ, by and through Defendants John Doe and Jane Doe, who are authorized to make and implement final policy decisions for SCDJJ, consciously chose a course of action - to ignore evidence of John Doe's conduct and proclivities toward other youth and the Plaintiff -- from among various alternatives in its response

to the reports from other staff that John Doe was abusive towards youth in SCDJJ's custody.

196.     SCDJJ's policies with respect to the course of conduct it chose to take in failing to protect the Plaintiff were in violation of his rights protected by the Fourth and Fourteenth Amendments in that they a) were unlawful, b) subjected Plaintiff to foreseeable and preventable excessive use of force by John Doe.

197.     All of John Doe's actions were undertaken pursuant to a custom or usage within the SCDJJ sufficiently widespread to have the force of law of using excessive force against people with mental illness and in mental or emotional crises.

198.     SCDJJ's failure to train its officers to respond appropriately to youth with mental illness and in mental or emotional crises made it likely that its officers would respond in such circumstances with unreasonable force.

199.     SCDJJ's failure to supervise and discipline officers who exercised excessive force when encountering youth with mental illness and in mental or emotional crises made it likely that its officers would continue to exercise excessive in such circumstances.

200.     SCDJJ's failures to train, discipline, and supervise were deliberately indifferent to Plaintiff's federal rights and the rights of others like him.

201.     As a direct and proximate result of SCDJJ's actions and inactions, Plaintiff's federal rights were violated, and he suffered injuries as set forth in this Complaint.

202.     This unconstitutional policy/course of action chosen by final policymakers for SCDJJ was the proximate cause of the violations of Plaintiff's rights.

## FOR AN ELEVENTH CAUSE OF ACTION
### (Attorney Fees and Costs of Litigation Pursuant to 42 U.S.C. § 1988)

203.     The foregoing allegations are re-alleged at if set forth herein verbatim.

204.     Pursuant to 42 U.S.C. 1988, Plaintiff seeks an award of reasonable attorney fees and costs of litigation in an amount to be determined by the Court at the conclusion of this matter.

WHEREFORE, Plaintiff respectfully prays for judgment against Defendant for all actual damages, punitive damages, and consequential damages in an amount to be determined by a jury at the trial of this action as well as attorney fees and costs, and for such other and further relief as this Court deems just and proper.

January 9, 2025

BOLES LAW FIRM, LLC·

s/Daniel C. Boles
Daniel C. Boles, Federal Bar No. 12144
3870 Leeds Avenue, Suite 104, 29405
843.576.5775 *office*
800.878.5443 *fax*

Aleksandra B. Chauhan,
Federal Bar No.14298
3411 Yale Ave.
Columbia, SC 29205
803.381.2607 *office*